**Suzanne DECK, et al., Plaintiff,**

v.

**CITY OF TOLEDO, et al., Defendant.**

**No. 3:98 CV 7451.**

United States District Court,
N.D. Ohio,
Western Division.

Nov. 20, 1998.

John Mark Finnegan, Esq., Equal Justice Foundation, Thomas J. Zraik, Esq., Toledo, for Suzanne Deck, David Wielinski, Daniel Asbury, Kelly Keefe, Gloria Steger, Robert Gerst, Daniel D Wilkins, plaintiffs.

Geoffrey H. Davis, Esq., City Of Toledo, Department Of Law, Toledo, for Toledo, City of, Toledo Department of Ransportation, City of, defendants.

## JUDGMENT ENTRY

KATZ, District Judge.

For the reasons stated in the Memorandum Opinion filed contemporaneously with this Judgment Entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Plaintiffs motion for a preliminary injunction is granted in accordance with directions set forth in the Memorandum Opinion filed this date.

FURTHER ORDERED that Defendant shall bring the following intersections into compliance, if it has not already done so, by the close of the current construction season. However, if there should be a turn in the weather which prohibits the City from completing the construction, the intersections shall be brought into compliance within thirty days of the commencement of the 1999 construction season. These areas include Nebraska/Byrne # 1, Nebraska/Byrne # 2, Nebraska/Byrne # 3, Maple/Streicher NW, Maple/Manhattan SE, Airport/Fearing NE island, Airport/Fearing SE island, Airport/Fearing NE, Airport/Fearing SW, Airport/Fearing NW, and Detroit/Glendale NE.

Additionally, with respect to the sites the Defendant claims are currently constructed to the "maximum extent feasible", the Defendant shall show cause on or before December 31, 1998, why each of the foregoing sites should not be brought into compliance within the first 60 days of the 1999 construction season. These sites include Monroe/Rushland NE, Monroe/Rushland NW, Maple/Hudson SE, Maple/Hudson SW, Maple/Hudson NE, Airport/Fearing SE, Nebraska/Douglas SE, Western/Field SE, and Detroit/ I–75 SW island, Detroit/ I–75 bridge.

## MEMORANDUM OPINION

This matter is before the Court on Plaintiffs' motion for a preliminary injunction. For the following reasons, Plaintiffs' motion is granted. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

## I. BACKGROUND

This matter is a class action suit brought by disabled persons who rely on manual or motorized wheel chairs or motorized scooters for mobility. Plaintiffs either live in the City of Toledo or frequently travel in Toledo. Plaintiffs filed a class action on August 8, 1998 against the City of Toledo, Division of Transportation, and Mayor Carleton Finkbeiner, III, in his official capacity as Mayor of Toledo. Plaintiffs allege failure to install numerous curb ramps which comply with the statutory requirements under the Americans with Disabilities Act, 42 U.S.C. § 12132, the ADA Accessibility Guideline, 28 C.F.R. Part 36, Appendix A, and the standards developed by the City of Toledo. Due to the safety hazards posed by the improperly installed ramps, Plaintiffs have requested a preliminary injunction against the City requiring curb ramp modifications so as to be in compliance with the governing laws and regulations as soon as practically possible.

## II. DISCUSSION

*A. The Preliminary Injunction Standard*

The granting or denial of a preliminary injunction is within the sound discretion of the trial court. *Virginia Railway Co. v. System Federation, R.E.D.,* 300 U.S. 515, 551, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937). The Sixth Circuit has set forth four standards for a District Court to use in making this determination: (1) whether the Plaintiffs have shown a strong or substantial likelihood or probability of success on the merits; (2) whether the Plaintiffs have shown that irreparable injury will result if the preliminary injunction is not granted; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether issuing a preliminary injunction would serve the public interest. *Martin–*

*Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 564 (6th Cir.1982). The party seeking the injunction must establish their case by clear and convincing evidence. *See Garlock, Inc. v. United Seal, Inc.* 404 F.2d 256, 257 (6th Cir.1968).

## B. Applicable Statutory Law

Title II of the Americans with Disabilities Act (ADA) prohibits discrimination in the provision of public services. Section 202 of the ADA provides:

No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The Act directs the Attorney General to implement the standards. The implementing regulations of the ADA can be found at 28 C.F.R. Part 36, Appendix A, the American with Disabilities Act Accessibility Guidelines (ADAAG).

Under ADAAG, curb ramps must meet the following standards: (1) no more than one inch of rise for each foot of run (1:12); (2) a "lip" at the juncture with the street of no more than one-quarter inch; (3) the entire curb must fit entirely within the painted cross walk; and (4) at least four feet of level surface at the entrance to the ramp. *See* 28 C.F.R. Part 36 Appendix A at 4.7.1., 4.7.2., 4.7.9, and 4.7.10 (1998). Since January, 1992, the ADA has required municipalities to install curb ramps meeting these specifications when repavings streets and roads. 42 U.S.C. § 12134 (Supp.1991). When a public entity elects to alter a facility, it "shall to the maximum extent feasible, be altered in such a manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities." 28 C.F.R. 35151(b) (1992). Undue burden is not a justification for failing to comply with the obligation of accessibility. *See Kinney v. Yerusalim,* 9 F.3d 1067, 1071 (3rd Cir.1993).

The phrase "to the maximum extent feasible" in 28 C.F.R. § 35.151(b)(1998) is not well defined within the regulations themselves or through the case law. Although the phrase is not addressed in the section on curb ramps, the ADAAG discusses "maximum extent feasible" in 28 C.F.R. Pt. 36 § 4.1.6(j) (1998), entitled Accessible Buildings: Alterations, which states:

In alteration work, if compliance with 4.1.6 is technically infeasible, the alteration shall provide accessibility to the maximum extent feasible.

*Technically Infeasible.* Means, with respect to an alteration of a building or a facility, that it has little likelihood of being accomplished because existing structural conditions would require removing or altering a load-bearing member which is an essential part of the structural frame; or because other existing physical or site constraints prohibit modification or addition of elements, spaces, or features which are in full and strict compliance with the minimum requirements for new construction and which are necessary to provide accessibility.

*See also Schonfeld v. City of Carlsbad,* 978 F.Supp. 1329, 1338 n. 9 (S.D.Cal.1997). Although the scope of "maximum extent feasible" is somewhat uncertain, it is clear that technical infeasibility will justify noncompliance with the regulations.

## C. Application to the Case at Bar

■ Plaintiffs list approximately 35 curb ramps which currently fail to comply with the ADA. They allege that irreparable harm will occur without the extraordinary remedy of injunctive relief. Plaintiffs must first satisfy the prerequisites required for a preliminary injunction in order for the Court to address the condition of the curb ramps at this juncture.

### i. Suitability for a Preliminary Injunction

As noted above, Plaintiffs must show a substantial likelihood of success on the merits, irreparable injury, substantial harm to others without the injunction, and that an injunction would serve the public interest. *See Martin–Marietta Corp. v. Bendix Corp.,* 690 F.2d 558, 564 (6th Cir.1982). Plaintiffs offer substantial proof that several curb ramps are not in compliance with the ADA

and ADAAG regulations. Although some ramps may currently be either under construction or in compliance to the maximum extent feasible, Plaintiffs have established a likelihood of success on the merits of the case. Additionally, Plaintiffs have established an irreparable and immediate harm to themselves and other handicapped individuals by showing that improperly constructed curb ramps prevent Plaintiffs from engaging in normal life activities such as crossing the street or accessing a sidewalk. At the hearing, Plaintiffs also testified as to the danger of "tipping" due to multiple inch lips on the curb ramp or the hazards of entering the street and being unable to re-enter the sidewalk area on the opposite side of the crosswalk due to curb ramps which are not in compliance with the ADA. Finally, a preliminary injunction would serve the public interest because "there is a significant public interest in eliminating discrimination against individuals with disabilities." *Thomas By and Through Thomas v. Davidson Academy,* 846 F.Supp. 611, 619 (M.D.Tenn.1994). Therefore, Plaintiffs have illustrated that this is an appropriate matter for the granting of a preliminary injunction.

### ii. The Curb Ramp at Issue

As an initial matter, the testimony established that several curb ramps were constructed prior to the 1998 construction season, and are therefore outside of the scope of the preliminary injunction. Plaintiffs' preliminary injunction request concerned only "all current projects." The Court will, therefore, not consider whether the following curb ramps are in compliance with the ADA and ADAAG at this juncture: Glendale/Cass/Eastgate; Douglas/Berdan; Glendale/ Green Valley SW; Adams/12th SW; South/Thayer SE; Broadway/South SE; Broadway/South NW; and Broadway/South SW. Furthermore, the parties are in agreement that the intersections of Nebraska/Douglas NE, Paston/ F.St. NW and Paston/F.St. S have recently been brought into compliance by the City.

In regard to at least ten other intersections, the evidence presented by Plaintiffs and the City is in direct conflict. The City asserts that it is currently in compliance with respect to these sites. The Plaintiffs maintain that compliance has not yet been reached and contend that these ramps either contain an excessive slope or lip according to the regulations. These areas include Nebraska/Byrne # 1, Nebraska/Byrne # 2, Nebraska/Byrne # 3, Maple/Streicher NW, Maple/Manhattan SE, Airport/Fearing NE island, Airport/Fearing SE island, Airport/Fearing NE, Airport/Fearing SW, Airport/Fearing NW, and Detroit/Glendale NE. The Court finds that the evidence justifies a resolution in favor of the Plaintiffs' position. With respect to these sites, the City will be directed to bring the foregoing intersections into compliance, if it has not already done so, by the close of the current construction season. However, if there should be a turn in the weather which prohibits the City from completing the construction, the intersections shall be brought into compliance within thirty days of the commencement of the 1999 construction season.

Finally, Defendant lists ten ramps which it claims are currently constructed to the "maximum extent feasible" due to the physical restraints of the site. These sites include Monroe/Rushland NE, Monroe/Rushland NW, Maple/Hudson SE, Maple/Hudson SW, Maple/Hudson NE, Airport/Fearing SE, Nebraska/Douglas SE, Western/Field SE, and Detroit/ I–75 SW island, Detroit/ I–75 bridge.

It is clear to the Court that accept in those instances where technical compliance may destroy the value of the improvement, such as the island at Detroit/ I–75 SW which may be too narrow to cut through, there would appear to be no reason why compliance with the regulations could not be accomplished. No citations have been offered by the City to illustrate to the Court why compliance cannot be attained, even in light of the necessity of a private taking of land. The Court directs that the City shall show cause on or before December 31, 1998, why each of the foregoing sites should not be brought into compliance within the first 60 days of the 1999 construction season.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is granted in

accordance with the directions provided in this Memorandum Opinion.

IT IT SO ORDERED.